IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| *ex rel.* KIARA MOORE, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. |
| | ) | Judge |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| MOUNT ZION BAPTIST CHURCH, | ) | **FILED *IN CAMERA* AND UNDER** |
| | ) | **SEAL PURSUANT TO 31 U.S.C. §** |
| Defendant. | ) | **3730(b)(2) – DO NOT SERVE** |

**SEALED COMPLAINT**

# FILED *IN CAMERA* AND UNDER SEAL PURSUANT TO 31 U.S.C. § 3730(b)(2) (DO NOT SERVE)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* KIARA MOORE,<br><br>Plaintiffs,<br><br>v.<br><br>MOUNT ZION BAPTIST CHURCH,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. _____<br>Judge _____<br>JURY TRIAL DEMANDED |

## COMPLAINT

Relator Kiara Moore ("Relator" or "Mrs. Moore"), by and through her attorneys, files this *qui tam* action in the name of the United States of America ("United States") pursuant to the provisions of the False Claims Act, 29 U.S.C. § 3729 *et seq.* ("FCA"), against Defendant Mount Zion Baptist Church ("MZB" or "Church") and states as follows:

## INTRODUCTION

1. Relator brings this action in the name of the United States to recover treble damages, civil penalties, costs, and all other appropriate relief under the FCA.

2. The specific allegations in this Complaint have not been publicly disclosed (a) in a federal criminal, civil, or administrative hearing in which the U.S. Government or its agent is a party or (b) in a Congressional, Government Accountability Office, or other U.S. Government report, hearing, audit, investigation.

3. To the extent that any facts alleged herein may have been disclosed by the media, or any Court determines that a public disclosure has taken place, Relator is an original source of the information upon which this Complaint is based, as that term is defined in 31 U.S.C. § 3730(e)(4)(B). Specifically, on or about November 29, 2022, Relator disclosed to the United

States the information on which the allegations in this Complaint are based, and Relator has knowledge of the facts alleged herein independent of any public disclosure and that materially adds to the publicly disclosed information.

4. This action arises from false statements and claims that MZB knowingly presented, or caused to be presented, to the United States and the United States Small Business Administration ("SBA"), and lenders acting on the SBA's behalf, in violation of the FCA.

5. On March 11, 2020, the World Health Organization declared the novel coronavirus ("COVID-19") a global pandemic. On March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. 116-136, 134 Stat. 281 ("CARES Act"), which was designed to provide emergency financial assistance to the millions of Americans suffering the economic effects caused by the pandemic. The CARES Act created the Paycheck Protection Program ("PPP" or the "Program").

6. The PPP provided emergency, and under certain circumstances, forgivable loans to small businesses that would use the funds only to pay certain, specified expenses during a covered period, including payroll expenses, rent, mortgage interest, or utilities.

7. The PPP loan application required that the borrower certify that it would only use PPP funds for payroll or to make payments for mortgage interest, rent, utilities, or certain other specifically enumerated expenses.

8. The PPP loan application also required recipients to certify that they would not discriminate in any employment practice on bases prohibited by SBA regulations.

9. On April 10, 2020, the Church was approved for a PPP loan for $967,600.00. On May 17, 2021, MZB obtained forgiveness of its PPP loan totaling $978,028.58.

10. MZB knowingly provided false information in its application for a PPP loan.

11. Despite PPP requirements, the Church knowingly used the loan funds obtained through the program for purposes outside of the limitations of the Program.

12. The Church also applied for forgiveness of its PPP loan while knowingly in violation of 13 C.F.R. § 113.3(a), contrary to its certification that it would comply with all applicable civil rights laws and other limitations required of PPP fund recipients.

13. The knowing submission of false information, misappropriation of funds, and acceptance and retention of funds in violation of the conditions of the Program constitute violations of the FCA, as these actions were material to the United States' decision to fund the Church's PPP loan. MZB is liable for this violation as it submitted or caused the submission of these false claims to the United States.

## JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction pursuant to 31 U.S.C. §§ 3730 and 3732.

15. This Court has personal jurisdiction over MZB pursuant to 31 U.S.C. § 3732(a) because at all times material hereto, MZB transacted business and is found in the Middle District of Tennessee, and acts proscribed by 31 U.S.C. § 3729 occurred in this district.

16. Venue is proper in this district pursuant to 31 U.S.C. § 3732(a), and under 28 U.S.C. §§ 1391(b) and 1395(a), because MZB resides, is headquartered, or does business in Davidson County, Tennessee. Furthermore, acts that form the basis of this Complaint occurred in the Middle District of Tennessee.

## PARTIES

17. Relator is an adult female citizen of the United States and resides in Rutherford County, Tennessee.

18. Relator began working as MZB's Health & Wellness Program Coordinator in January 2016, and during her employment with MZB has obtained knowledge of the facts alleged herein.

19. MZB is a Tennessee Non-Profit Corporation, with its principal place of business located in this District.

## LEGAL FRAMEWORK

### I. The PPP

20. On March 27, 2020, the CARES Act created the PPP, initially making $349 billion in forgivable loans available to small businesses impacted by the COVID-19 pandemic. The SBA administers the PPP, promulgates the rules and regulations that govern it, and guarantees all PPP loans made by lenders.

21. The PPP allows small businesses (less than 500 employees) to obtain forgivable loans of up to $10 million, at 1% interest, to cover payroll costs, rent, mortgage interest, utilities, and other overhead expenses for a "covered period." *See generally* 85 F.R. 20814. PPP loans are processed and approved by qualified lenders approved by the SBA. Lenders may issue PPP loans without the SBA's prior review or approval, but lenders are responsible for determining borrower eligibility under the SBA's criteria.

22. Because the initial PPP funding was quickly exhausted, on April 24, 2020, the President signed into law the Paycheck Protection Program and Health Care Enhancement Act, Pub. L. No. 116-139, 134 Stat. 620, whereby Congress allocated a second tranche of funding, $310 billion, for PPP loans to small businesses. The SBA adopted interim rules governing eligibility through June 24, 2020. The United States further modified the PPP on June 5, 2020, when the

President signed the Paycheck Protection Program Flexibility Act of 2020 ("Flexibility Act"), Pub. L. No. 116-142, 134 Stat. 641.

23. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies. Although the participating lender issued the PPP loan, the loan was 100% guaranteed by the SBA. Data from the application, including, but not limited to, information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted by the lender to the SBA in the course of processing the loan and subsequent forgiveness process.

24. To obtain a PPP loan, a qualifying business submitted a PPP loan application (SBA Form 2483) signed by an authorized representative. In the PPP loan application, the small business (through its authorized representative) was required to provide, among other things, its (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

25. PPP loan proceeds were required to be used by the business on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. *E.g.*, 85 F.R. 20814. The Program allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses. *See generally* 85 F.R. 66214.

26. The April 2, 2020 version of the SBA's PPP Borrower Application Form ("BAF")[1] required the borrower to acknowledge the Program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including, *inter alia*, that

- "All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule;"

- "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant;"

- "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud;"

- For a PPP loan to be eligible for forgiveness, "not more than 25% of the forgiven amount may be for non-payroll costs;"[2]

- "Current economic uncertainty makes this loan request necessary to support ongoing operations of the Applicant;"

- "The Applicant is eligible to receive a loan under the rules in effect at the time this application is submitted that have been issued by the [SBA] implementing the [PPP] under Division A, Title I of the [CARES Act] (the Paycheck Protection Program Rule);"

---

[1] Although Relator does not have a copy of the Church's final BAF, the SBA required MZB to complete and sign a BAF in order to apply for and obtain a PPP loan.

[2] This threshold was later raised to 40%.

- "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects," and that the Applicant understood that "making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000;"

- "The Applicant is not engaged in any activity that is illegal under federal, state or local law;" and

- "[The applicant] will comply, whenever applicable, with the civil rights and other limitations in this form," including that "All businesses receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations."

27. 13 C.F.R. § 113.3(c) states that recipients of SBA financial assistance may not

> With regard to employment practices within the aided business or other enterprise, whether or not operated for profit; discriminate against a qualified handicapped person; *or because of handicap, fail or refuse to seek or retain the person's services or to provide the person with opportunities for advancement or promotion, or accord an employee the rank and rate of compensation, including fringe benefits, merited by the employee's services and abilities. All employment decisions shall be made in a manner which ensures that discrimination on the basis of handicap does not occur.* Such decisions may not limit, segregate, or classify job applicants or employees in any way that adversely affects the opportunities or status of qualified handicapped individuals.

(emphasis added).³

28. 13 C.F.R. § 113.3(e) further states, in part, that recipients of SBA financial assistance may not "[u]se employment tests or criteria that discriminate on the basis of race, color, religion, sex, marital status, *handicap*, or national origin." (emphasis added).

29. The PPP also provided for loan forgiveness if PPP funds were used for authorized purposes. The June 16, 2020 version of the SBA's Loan Forgiveness Application ("LFA") requires the PPP loan recipient to certify, *inter alia* that

- "The dollar amount for which forgiveness is requested[] was used to pay costs that are eligible for forgiveness (payroll costs to retain employees; business mortgage interest payments; business rent or lease payments; or business utility payments;" and

---

³ *See generally* 13 C.F.R. § 113.1(a) ("The purpose of this part is to reflect to the fullest extent possible the nondiscrimination policies of the Federal Government as expressed in the several statutes, Executive Orders, and messages of the President dealing with civil rights and equality of opportunity, and in the previous determination of the Administrator of the Small Business Administration that *discrimination based on* race, color, religion, sex, marital status, *handicap* or national origin *shall be prohibited*, to the extent that it is not prohibited by part 112 of this chapter, *to all recipients of financial assistance from SBA*.") (emphasis added); 29 U.S.C. § 794(a) & (d) ("No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. The head of each such agency shall promulgate such regulations as may be necessary to carry out the amendments to this section made by the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978. . . . The standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) . . . ."); 42 U.S.C § 12112(b)(4) (discriminating on the basis of disability includes "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association.").

- The borrower understood that "if the funds were knowingly used for other purposes, the federal government may pursue recovery of loan amounts and/or civil or criminal fraud charges."

## II. The FCA

30. The FCA provides, in pertinent part, that any person who:

(a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

(a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

(a)(1)(G) knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government

is liable to the United States for three times the amount of damages that the United States sustains, plus a civil penalty per violation. 31 U.S.C. § 3729(a)(1).

31. FCA penalties are regularly adjusted for inflation. *See* 28 U.S.C. § 2461 note. For violations occurring after November 2, 2015, the civil penalty amounts currently range from a minimum of $12,537.00 to a maximum of $25,076.00. 28 C.F.R. § 85.5.

32. For purposes of the FCA, the terms "knowing" and "knowingly"

    (A) mean that a person, with respect to information—
        (i) has actual knowledge of the information;
        (ii) acts in deliberate ignorance of the truth or falsity of the information; or
        (iii) acts in reckless disregard of the truth or falsity of the information; and
    (B) require no proof of specific intent to defraud.

31 U.S.C. § 3729(b)(1).

33. Under the FCA, a "claim" includes a request to the United States for payment, whether made directly or indirectly to the United States. 31 U.S.C. § 3729(b)(2)(A).

34. The FCA defines "material" to mean "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4).

## FACTUAL ALLEGATIONS

I. <u>MZB Misrepresented the Church's Number of Employees and Payroll</u>

35. In PPP loan applications, small businesses were required to provide, among other things, their (a) average monthly payroll expenses and (b) number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.

36. When applying for its PPP loan, MZB certified "that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

37. As of April 2020, MZB employed approximately 54 individuals.

38. At no time during the relevant period for this case has MZB employed over 200 individuals. Indeed, during that period MZB never had more than 100 employees.

39. In or around April 2020, MZB submitted a PPP BAF. Based on information available from the SBA, the BAF stated that MZB had 223 employees.

40. In the PPP BAF, MZB certified that it would comply with all of the requirements of the Program, including those outlined above.

41. On or about April 10, 2020, MZB was approved for a PPP loan in the amount of $967,600.

42. This PPP loan amount was based on misrepresentations in a loan application submitted to Truist Bank. For example, in the PPP loan application, MZB misrepresented the number of employees at MZB.

43. On information and belief, the Church also misrepresented its payroll costs, which were used in calculating the maximum loan amount for which MZB was eligible. These misrepresentations caused MZB to receive loan proceeds in excess of what it otherwise would have received.

44. Despite these misrepresentations, MZB accepted and retained the PPP loan funds that it obtained because of its application.

45. Moreover, on or around May 17, 2021, MZB applied for and obtained forgiveness of its PPP loans having never corrected or disclosed the misrepresentations on its PPP BAF.

II. <u>MZB Used Its PPP Loan Funds for Unauthorized Purposes</u>

46. The SBA required that PPP loan proceeds be used on certain permissible expenses, including payroll costs, interest on mortgages, rent, and utilities. The Program allowed the interest and principal on the PPP loan to be forgiven if the business spent the loan proceeds on these expense items within a designated period and used a defined portion of the loan on payroll expenses.

47. The BAF required MZB to certify that "The funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." Moreover, MZB certified that "[c]urrent economic uncertainty makes this loan request necessary to support ongoing operations of the Applicant."

48. MZB misrepresented on its BAF that it would only use its PPP loan funds for expenses authorized under the Program.

49. To the contrary, MZB did not need a PPP loan to ensure its ongoing operations. MZB's own website acknowledges that it "continues to grow at a phenomenal rate of over 1,000 souls per year." In or around May or June of 2020, Relator attended an Executive Committee meeting where CEO Marilyn Stone notified the attendees of MZB's PPP loan. During a PowerPoint presentation at the same meeting, at a time when MZB allegedly needed federal loan funding to ensure its ongoing operations, Ms. Stone also reported that giving to the Church had increased from approximately $1.3 million per month to approximately $1.5-1.8 million per month.

50. In 2020, Joseph Walker III ("Bishop Walker"), leader of MZB, was making approximately $2.5 million per year, not counting additional money he received from speaking engagements and other appearances.

51. Moreover, MZB continued to provide lavish perks to Bishop Walker and his family during the entirety of 2020 and 2021. These included

- Personal Chef dinners from The Lost Spoon that ranged in price from $1,000-$3,000 every Sunday. Usually these meals were for the Bishop and his immediate family, though sometimes other family or invitees would attend.

- MZB provided Bishop Walker with a non-taxable Parsonage Allowance to cover the majority of his rent/mortgage. The Walkers' house has five bedrooms, eight bathrooms, and has an estimated value of over $5 million.

- MZB also provided Bishop Walker and his family with periodic access to a private jet by Jet Linx.

52. The circumstances surrounding MZB mortgage debt and the forgiveness of its PPP loan further demonstrate that the Church did not need the loan funds to support ongoing operations.

In 2019, MZB owed approximately $3.5 million in mortgage debt on its Old Hickory Boulevard ("OHB") property. By 2020, before receiving its PPP loan, MZB still owed approximately $1.8 million on the property.

53. On or around May 17, 2021, MZB obtained forgiveness of its PPP loans totaling $978.028.58, having never corrected or disclosed the misrepresentations on its PPP BAF or its misappropriation of PPP loan funds. In or around August 2021, approximately three months after MZB secured forgiveness of its PPP loan, MZB reopened for services and announced that the Church had paid off its remaining mortgage obligations, including all outstanding principal.

54. Within three months or less of receiving PPP loan forgiveness of approximately $1 million, MZB found sufficient funds to pay off the remaining debt on its OHB property, which at that time was somewhere around $1-2 million.

55. MZB used Program funds, or other funds made available to the Church because of MZB obtaining its PPP loan, to pay these impermissible expenses during the months following the approval of the loan, culminating in the payment of all of its mortgage debt within three months of obtaining loan forgiveness.

56. Despite these misrepresentations, MZB accepted and retained the PPP loan funds that it obtained because of its false application and false representations that the funds would be used to cover payroll and keep employees working. Indeed, MZB fired two employees, Gerald Scott and Steffanie Barnett, in or around June or July of 2020 during the covered period of the PPP loan. MZB staff were told that these firings were due to "budget cuts."

III. **MZB Used and Obtained Forgiveness for its PPP Loan Despite Violating Applicable Federal Civil Rights Law**

57. The BAF required the Church to certify that it would "comply, whenever applicable, with the civil rights and other limitations in this form," including that "All businesses

receiving SBA financial assistance must agree not to discriminate in any business practice, including employment practices and services to the public on the basis of categories cited in 13 C.F.R., Parts 112, 113, and 117 of SBA Regulations."

58. MZB applied for and obtained forgiveness of its PPP loan while knowingly in violation of its certification that it would comply with all applicable civil rights laws and other limitations required of PPP fund recipients. Before obtaining forgiveness of its PPP loan, MZB discriminated against Relator on the basis of handicap.

59. Relator received a bachelor's degree in Biological Sciences from Hampton University in 2012. She later received a Master of Science in Public Health from Meharry Medical College in 2014.

60. In January 2016, MZB hired Relator as a full-time employee with the title of Health & Wellness Program Coordinator ("Position").

61. While employed by MZB, Relator earned a Master of Arts in Non-Profit Administration from Lindenwood University in 2017.

62. During Relator's employment with MZB, she has consistently met or exceeded MZB's expectations. Relator has enjoyed success in her Position and substantially helped the Church further its business and mission.

63. In addition to praise by MZB for her work contributions, Relator received above-average employee evaluations, as well as monetary performance bonuses.

64. Relator is the parent of a minor child, K.M., who suffers from Sickle Cell Disease ("SCD"). K.M. was diagnosed with SCD in May of 2020, shortly after she was born.

65. K.M.'s disability was well known within the Church, including but not limited to, by Bishop Walker; Dr. Stephanie Walker ("Dr. Walker"); Lawrence Washington ("Elder Washington"), and Andre Anderson ("Mr. Anderson").

66. On or about December 6, 2020, K.M. was hospitalized due to her disability. Relator immediately notified Dr. Walker of K.M.'s emergency hospitalization and the reason for the hospitalization. The following day, Mrs. Moore also notified Elder Washington and Mr. Anderson about K.M.'s hospitalization and for what reason she was hospitalized.

67. In observance of the holiday season, MZB was closed between December 18, 2020 and January 5, 2021.

68. On or about January 12, 2021, about 34 days after K.M. was released from the hospital, and only seven days after MZB re-opened after closure for the holiday season, the Church notified Mrs. Moore that (1) her full-time role was being reduced to part-time as of February 1, 2021; (2) her salary was being cut in half and she would become an hourly employee; and (3) that she would also lose her employee health benefits in March of 2021.

69. Mrs. Moore was informed that these steps were required because MZB was undergoing "budget cuts."

70. MZB's rationale of "budget cuts" was pretext, because in or about the summer of 2021, the Church paid off all its mortgage debt as discussed above. Moreover, in the spring of 2021, MZB hired additional employees, including another employee in its Health & Wellness Department.

71. MZB discriminated against Mrs. Moore based on her known association with an individual with a disability.

72. The Church's conduct violated applicable SBA civil rights regulations and other federal laws regarding discrimination in employment practices on the basis of handicap.

73. The Church's conduct rendered the certifications in its PPP BAF regarding compliance with SBA's civil rights regulations false.

74. Commencing February 1, 2021, through approximately the week of January 13, 2022, Relator regularly and consistently performed work for MZB, at the request of and direction of the Church, for which she was not paid, despite her having the expectation that she would be paid for all time worked.

**COUNT ONE**
**False or Fraudulent Claims**
**31 U.S.C. § 3729(a)(1)(A)**

75. Relator incorporates by reference Paragraphs 1 through 74 as if fully set forth herein.

76. MZB knowingly presented or caused to be presented materially false claims and, as a result, secured PPP loans in amounts to which it was not entitled, in violation of Program rules.

77. MZB knowingly presented or caused to be presented materially false claims for forgiveness of the PPP loans despite its violations of Program rules.

78. The United States, unaware of the material falsity of the claims made or caused to be made by MZB, approved, paid, and participated in payments made by the United States' fiscal intermediaries for a loan that otherwise would not have been allowed.

79. Because of MZB's false claims, the United States was damaged for the full amount of the PPP loan forgiven by the SBA, and is entitled to treble damages plus civil penalties for each violation pursuant to the FCA.

## COUNT TWO
### False Statements
### 31 U.S.C. § 3729(a)(1)(B)

80. Relator incorporates by reference Paragraphs 1 through 79 as if fully set forth herein.

81. MZB knowingly used or caused to be used a materially false PPP BAF in order to obtain a PPP loan, which was ultimately paid by the United States.

82. MZB then knowingly submitted a PPP LFA that misrepresented its use of PPP loan funds and eligibility for loan forgiveness.

83. The United States, unaware of the material falsity of the records, approved, paid, and participated in payments made by the United States' fiscal intermediaries for a loan that otherwise would not have been allowed.

84. Because of MZB's false statements, the United States was damaged for the full amount of the PPP loan forgiven by the SBA, and is entitled to treble damages plus civil penalties for each violation pursuant to the FCA.

## COUNT THREE
### Reverse False Claims
### 31 U.S.C. § 3729(a)(1)(G)

85. Relator incorporates by reference Paragraphs 1 through 84 as if fully set forth herein.

86. MZB knowingly made, used, or caused to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the United States, or knowingly concealed or knowingly and improperly avoided or decreased an obligation to pay or transmit money or property to the United States.

87. Because of MZB's acts, the United States sustained damages for the full amount of the PPP loan forgiven by the SBA, and is entitled to treble damages plus civil penalties for each violation pursuant to the FCA.

## PRAYER FOR RELIEF

WHEREFORE, Relator, in the name of the United States and for herself, demands judgment in their favor and against MZB as follows:

A. For an amount of the United States' damages, trebled as required by law, plus such civil penalties in an amount between $12,537.00 and $25,076.00 for each and every false claim as are required by law, together with all such further relief as may be just and proper;

B. That Relator be awarded an amount to be determined as set forth in 31 U.S.C. § 3730(d);

C. That Relator be awarded all costs of this action, including attorneys' fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d);

D. That the United States and Relator be granted any and all other relief that the Court deems appropriate and just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Relator demands a trial by jury on all claims properly triable by a jury.

Dated: January 11, 2023                    Respectfully Submitted,


                                           s/ Christopher C. Sabis
                                           Christopher C. Sabis, #30032
                                           Sherrard Roe Voigt & Harbison, PLC
                                           150 3rd Avenue South, Suite 1100
                                           Nashville, Tennessee 37201
                                           615.850.6822
                                           csabis@srvhlaw.com

                                           - and -


                                           s/ William D. Harris II
                                           William D. Harris II
                                           Pro Hac Vice (forthcoming)
                                           HARRIS LEGAL ADVISORS LLC
                                           605 N. High Street, Suite 146
                                           Columbus, Ohio 43215
                                           614.504.3350
                                           will@harrislegaladvisors.com

                                           *Attorneys for Plaintiff Kiara Moore*